**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

DAVID HOCHEISER,                :

                                      :

                 Plaintiff,    :     Civil Action No. 17-6096 (FLW) (DEA)

                                        :

             v.                  :

                                        :          **OPINION**

LIBERTY MUTUAL INSURANCE    :

COMPANY; LIBERTY LIFE         :

INSURANCE COMPANY OF BOSTON;  :

CHRISTINA EAGEN; SHANNON     :

WRIGHT; LINDSAY MACK;        :

NANCY WINTERER; BARBARA     :

DURLING, *et al.*,              :

                                        :

                 Defendants.  :

_____ :

**WOLFSON, United States District Judge:**

        Following the denial of his claim for long-term disability benefits under an employee

benefits plan, Plaintiff David Hocheiser ("Plaintiff") filed the instant action against Defendants

Liberty Mutual Insurance Company, Liberty Mutual Insurance Company of Boston, Christina

Eagen, Shannon Wright, Lindsay Mack, Nancy Winterer, and Barbara Durling (collectively,

"Defendants"), asserting claims under Sections 502(a)(2) and 502(a)(3) of the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3), as well as

various state law claims.  Presently before the Court is Defendants' Motion to Dismiss Plaintiff's

Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon

which relief can be granted.[1]

_____

[1] Defendants also move, pursuant to Federal Rule of Civil Procedure 12(f), to strike Plaintiff's
requests for punitive damages, compensatory damages, and for a jury trial.  Under Rule 12(f),

For the reasons that follow, the Court finds that: (1) individual defendants Christina Eagen, Shannon Wright, Lindsay Mack, Nancy Winterer, and Barbara Durling are not proper party defendants on Plaintiff's ERISA claims, as pled, and thus, that Plaintiff's claims against them are dismissed without prejudice; (2) Plaintiff's state law claims are preempted by ERISA, and thus, dismissed with prejudice; and (3) Plaintiff's ERISA claim against Defendants Liberty Mutual Insurance Company and Liberty Mutual Insurance Company of Boston is pled under the wrong subsection of ERISA, and thus, is dismissed without prejudice. However, Plaintiff is given leave to amend his Complaint, to assert an ERISA claim under the proper subsection of that statute, within thirty (30) days from the date of the Order accompanying this decision.

## I.    __BACKGROUND__[2]

Until the onset of his alleged disability, Plaintiff was employed as a mortgage broker for Wells Fargo. Compl. ¶ 1. By virtue of his employment with Wells Fargo, Plaintiff was a participant in an ERISA-governed long-term disability benefits plan (the "Plan"). *Id.* at ¶¶ 1, 14. The Plan was funded and administered by Defendants Liberty Mutual Insurance Company and Liberty Mutual Insurance Company of Boston (collectively, "Liberty Mutual"). *Id.* at ¶¶ 1-3.

---

courts are permitted to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "As a general matter, motions to strike under Rule 12(f) are highly disfavored. *See F.T.C. v. Hope Now Modifications, LLC*, No. 09-1204, 2011 WL 883202, at *1 (D.N.J. Mar. 10, 2011). Ultimately, "the Court's determination on a 'motion to strike under Rule 12(f) is discretionary.'" *Newborn Bros. Co. v. Albion Eng'g Co.*, 299 F.R.D. 90, 94 (D.N.J. 2014) (citation omitted). As set forth, *infra*, the Court will dismiss Plaintiff's ERISA claim without prejudice, with leave to file an amended complaint. Accordingly, the Court will deny Defendants' Motion to Strike without prejudice. Defendants may renew this Motion, if necessary, after Plaintiff files an amended complaint.
[2] The following factual allegations are taken from the Complaint and assumed as true in deciding the instant Motion. *See Newman v. Beard*, 617 F.3d 775, 779 (3d Cir. 2010) (observing that, on a motion to dismiss, the court must "accept all factual allegations as true, construe the . . . complaint in the light most favorable to [the plaintiff], and determine whether, under any reasonable reading of the amended complaint, he may be entitled to relief.").

Christina Eagen, Shannon Wright, Lindsay Mack, Nancy Winterer, and Barbara Durling (collectively, the "Individual Defendants") were, at all relevant times, "employee[s] of . . . Liberty, and [were] charged with and/or involved with the handling of [P]laintiff's claims with Liberty." *Id.* at ¶¶ 4-8.

According to the Complaint, during the course of his employment with Wells Fargo, Plaintiff began to experience "ongoing muscle pain and other serious and disabling conditions, progressively increasing in severity and extent." *Id.* at ¶ 20. Specifically, Plaintiff alleges that his condition resulted in muscle spasms, limited mobility, muscle stiffness, an inability to focus, concentrate, sit, stand, or walk, and constant pain. *Id.* at ¶¶ 22-23.

As a result of his alleged disabilities, Plaintiff ceased work and, at some point prior to October 15, 2014,[3] filed a claim to recover long-term disability benefits under the Plan. *Id.* at ¶ 25 and Ex. 3. Liberty initially denied Plaintiff's claim, and Plaintiff appealed. *Id.* at ¶¶ 26-27. On December 9, 2014, Liberty notified Plaintiff's counsel, through a letter signed by Lindsay Mack, that it was reversing its initial denial of Plaintiff's claim, based on Liberty's determination that Plaintiff was eligible for long-term disability benefits. *Id.* at ¶ 29 and Ex. 4. As a result, Plaintiff began receiving disability benefits under the Plan. *Id.* at ¶ 30.

The Complaint next alleges that on December 16, 2014, Plaintiff's counsel received a letter[4] from Shannon Wright, the initial case manager for Plaintiff's claim, Compl. ¶¶ 33, 39,

_____

[3] The Complaint does not indicate the date on which Plaintiff filed his initial claim, the date on which Liberty denied that claim, or the date on which Plaintiff appealed the initial denial of his claim.

[4] Although a district court may not consider matters extraneous to the pleadings, 'a document *integral* to or *explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'" *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis in original). Accordingly, because Plaintiff explicitly references

which indicated that the reversal of Plaintiff's claim was based on Plaintiff's "reported symptoms and impairments," rather than any clear diagnosis. Compl., Ex. 6. The letter also stated that Liberty would continue to evaluate Plaintiff's claim for disability benefits, and that, as part of that evaluation, Liberty would "obtain periodic updates from [Plaintiff's] providers to assess [his reported] symptoms and impairments . . . ." *Id.* The letter further indicated that Liberty had received information that Plaintiff had received treatment for depression and anxiety, and advised Plaintiff that his claim for benefits under the Plan was subject to a provision that limited the period of time that a participant could receive benefits due to a psychiatric condition. *See* Compl. ¶¶ 33-35 and Ex. 6. Specifically, the letter stated:

> Since it is noted in Mr. Hocheiser's medical record that he has received treatment for symptoms related to depression and anxiety, his claim is also subject to a provision of the [Plan] that limits the period of time he may receive benefits due to a psychiatric condition. The Mental Illness provision of the [Plan] limits benefits to a period of twenty-four months. This twenty-four month limit is retroactive to the date his benefits began, March 25, 2014, and the limitation will reach its maximum as of March 24, 2016. Beyond this date, continued consideration to any benefits as the result of a mental illness will not be considered.

Compl., Ex. 6. However, the Complaint alleges that "Plaintiff received no treatment of any kind related to depression [or] any other psychological or psychiatric issues," Compl. ¶ 34, and avers that the "efforts by Defendant Shannon Wright to bring in psychiatric and/or psychological issues . . . as a result constitute an obvious effort by defendants, and each of them, to undermine Plaintiff's claim." *Id.* at ¶ 35. Plaintiff subsequently requested that Ms. Wright be removed from his case, and Plaintiff's case was reassigned to Christina Eagen. *Id.* at ¶ 39.

---

the letter from Ms. Wright in his Complaint, the Court may consider that letter on this Motion to Dismiss.

The Complaint next alleges a series of conduct related to Defendants' subsequent review of Plaintiff's continued eligibility for disability benefits, which conduct Plaintiff alleges is demonstrative of bad faith. Specifically, the Complaint alleges the following:

- Defendants retained a detective to "follow and video record" Plaintiff following the December 9, 2014 approval of Plaintiff's claim for benefits. Compl. ¶ 52(a).

- Defendants "have done nothing but "Dr. Shop" since the December 2014 approval of Plaintiff's claim for benefits, seeking doctors who would opine that Plaintiff was able to work, in order to overturn the finding of disability. Compl. ¶ 52(e).

- On January 8, 2015, Ms. Wright sent a letter requesting clarification of the status of Plaintiff's counsel, despite prior correspondence between Ms. Wright and Plaintiff's counsel. Compl. ¶ 36. The Complaint also alleges that Ms. Wright "wrote in her denial that Plaintiff's disability was a 'fairytale,' disregarding doctors' notes that described [his] disability condition." Compl. ¶ 52(g).

- In February 2015, "Defendants had a neuromuscular doctor telephone Plaintiff's physical therapist . . ., and he gave the therapist a hard time when the therapist explained that [Plaintiff] was regressing." Compl. ¶ 52(b).

The Complaint also alleges that, on numerous occasions between December 9, 2014 and May 23, 2016, Defendants sought and received, from both Plaintiff and Plaintiff's treating physicians, medical records and authorizations regarding Plaintiff's condition. *See* Compl. ¶¶ 53-72.

On May 23, 2016, Liberty issued a decision terminating Defendants' long-term disability benefits under the Plan. *Id.* at ¶ 76. According to the Complaint, that decision failed to reference a report of Plaintiff's occupational therapist, or otherwise incorporate the results of any "physical examination of . . . Plaintiff." *Id.* at ¶¶ 72-76. Rather, the Complaint alleges that "all of the medical information relied upon was the so-called 'peer review' of the records by [Defendants'] paid medical 'consultants,'" *id.* at ¶ 74, none of whom ever performed a physical examination of Plaintiff. *Id.* at ¶ 75. Ultimately, Plaintiff administratively appealed the March 23, 2016 termination of benefits, which decision was upheld on February 18, 2017. *Id.* at ¶¶ 78, 81.

On June 16, 2017, Plaintiff filed the instant action in the Superior Court of New Jersey, Law Division, Monmouth County. On August 14, 2017, Defendants removed the action to this District on the basis of federal question jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1441. ECF No. 1. The Complaint asserts five causes of action against Defendants. Count One asserts that the denial of Plaintiff's claim for disability benefits constitutes a breach of contract. *See* Compl. ¶¶ 84-86. Count Two asserts that Defendants "committed bad faith by denying benefits under the [Plan] without good reason." *See id.* at ¶¶ 87-91. Count Three asserts that the "actions of Defendants . . . [were] malicious," or constitute a "willful, wanton, and/or reckless disregard of Plaintiff's rights." *See id.* at ¶¶ 92-96. Count Four asserts that Defendants' denial of Plaintiff's claim for benefits under the Plan violated §§ 502(a)(2) and 502(a)(3) of ERISA. *See id.* at ¶¶ 97-102. Finally, Count Five asserts that the Defendants engaged in unfair settlement practices, in violation of N.J.S.A. § 17B:30-13.1. *See id.* at ¶¶ 103-107.

On August 31, 2017, Defendants moved to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 7. That Motion has been fully briefed. ECF Nos. 11-12, 14.

## II.  **LEGAL STANDARD**

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation

marks and citation omitted). While Federal Rule of Civil Procedure 8(a)[5] does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the Complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the "plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

In sum, under the current pleading regime, to determine whether a plaintiff has met the facial plausibility standard mandated by *Twombly* and *Iqbal*, courts within the Third Circuit engage in a three-step progression. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the reviewing court "must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) (citations and quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. (citations and quotations omitted). Finally, "when there are well-pleaded factual allegations, the court should assume their veracity

---

[5] In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court reaffirmed that Federal Rule of Civil Procedure 8(a) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (citations,

quotations, and brackets omitted). This last step of the plausibility analysis is "a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense."

*Iqbal*, 556 U.S. at 679.

## III.    DISCUSSION

In moving to dismiss the Complaint, Defendants argue that Plaintiff's ERISA claims are

pled under the wrong subsection of ERISA, and that the Individual Defendants are not proper

defendants with respect to Plaintiff's ERISA claims.  Additionally, Defendants maintain that

Plaintiff's state law causes of action are preempted under ERISA.  The Court will address each

of these contentions, in turn.

### A.    Plaintiff's ERISA Claims

#### 1.    *Plaintiff's ERISA Claims Are Improperly Pled Under Sections 502(a)(2) and 502(a)(3) of ERISA*

Count Four of the Complaint asserts claims pursuant to Sections 502(a)(2) and 502(a)(3)

of ERISA, arising solely out of Defendants' denial of Plaintiff's claim for benefits.  Compl. ¶¶

97-102.  Section 502(a)(2) of ERISA authorizes "the Secretary of Labor as well as plan

participants, beneficiaries, and fiduciaries, to bring actions on behalf of a plan to recover for

violations of the [fiduciary] obligations defined in § 409(a)."  *LaRue v. DeWolff, Boberg &*

*Assocs., Inc.*, 552 U.S. 248, 253 (2008); *see* 29 U.S.C. §§ 1132(a)(2) and 1109(a).  In

*Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985), the Supreme Court held that

recovery under § 409 must inure "to the benefit of the plan as a whole." *Id.* at 140.  Thus, except

in limited circumstances, it is well-established that § 502(a)(2) "does not allow for individual

recovery" for breach of fiduciary duty.  *Ream v. Frey*, 107 F.3d 147, 152 (3d Cir. 1997).

Section 502(a)(3) of ERISA provides that "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Section 502(a)(3) authorizes equitable relief directly to a participant or beneficiary to redress any act or practice which violates any provision of ERISA, including a breach of the statutorily created fiduciary duty of an administrator. *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1298 (3d Cir. 1993).

Here, Defendants move to dismiss Plaintiff's ERISA claims, arguing that: (1) Plaintiff cannot state a claim under § 502(a)(2), because the Complaint seeks recovery of benefits allegedly owed to Plaintiff on an individual basis, rather than on behalf of the Plan as a whole; and (2) Plaintiff cannot state a claim under § 502(a)(3), because Plaintiff seeks a remedy for the same alleged wrongdoing under a separate provision of ERISA. Plaintiff concedes that he has failed to state a claim under both §§ 502(a)(2) and 502(a)(3); arguing instead that his Complaint actually seeks relief under § 502(a)(1)(B), and that the Complaint's citation to the other sections of ERISA amount to clerical error. Pl.'s Br. at 20 ("As [Defendants'] brief . . . recognizes, Section 502(a)(1)(B) of ERISA . . . is the appropriate reference for the recovery of benefits . . . . Obviously, due to a clerical error . . . there is a reference to an inapplicable section of ERISA.").

The Court agrees that Plaintiff's ERISA claim falls under § 502(a)(1)(B). As a result, the Court will dismiss Plaintiff's claims under § 502(a)(2) and 502(a)(3) without prejudice, and permit Plaintiff to amend his Complaint to assert a claim under § 502(a)(1)(B). Nonetheless, for the purposes of this Opinion, the Court will analyze Plaintiff's ERISA claim as if it was asserted

under the proper section, § 502(a)(1)(B), because the remaining legal arguments raised by the parties relate to wrongful denial of benefits, which is the claim that Plaintiff intended to bring.

## 2.    *ERISA Claims Against Individual Defendants*

Defendants argue that Plaintiff's ERISA claim must be dismissed, insofar as it is asserted against the Individual Defendants, because ERISA only permits suits to recover benefits against a plan as an entity or fiduciaries of the plan, and the Complaint fails to allege facts sufficient to find that the Individual Defendants were fiduciaries with respect to the Plan.  I agree.

Section 502(a)(1)(B) of ERISA authorizes a "participant or beneficiary" of a benefits plan to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  ERISA further provides that "[a]ny money judgment under [§502] against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter."  29 U.S.C. § 1132(d)(1).  While claims for wrongful denial of benefits under § 502(a)(1)(B) are generally asserted solely against the plan as an entity, *see Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 911 (7th Cir. 2013), the statute does not explicitly state whether § 502(a)(1)(B) claims can be asserted against non-plan defendants.  However, in *Graden v. Conexant Sys. Inc.*, 496 F.3d 291 (3d Cir. 2007), The Third Circuit held that the only proper defendants in a § 502(a)(1)(B) claim are "the plan itself (or plan administrators in their official capacities only)."  *Id.* at 301.  Here, Plaintiff has not alleged that the Individual Defendants are plan administrators, and thus, Plaintiff's § 502(a)(1)(B) claim against the Individual Defendants necessarily fails.

In any event, outside of § 502(a)(1)(B), ERISA only authorizes causes of action against the plan and "fiduciaries," of the plan, as that term is defined under the statute.  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989) ("ERISA explicitly authorizes suits against fiduciaries and plan administrators to remedy statutory violations, including breaches of fiduciary duty and lack of compliance with benefit plans."); *see*, *e.g.*, *Curcio v. John Hancock Mut. Life Ins. Co*., 33 F.3d 226, 234 (3d Cir. 1994) (finding that the defendant met the statutory definition of fiduciary, and thus, was a proper defendant in an ERISA action).  Accordingly, Plaintiff's ERISA claims against the Individual Defendants turns on whether the Individual Defendants qualify as "fiduciaries" for the purposes of ERISA.

Under ERISA,

a person is a fiduciary with respect to a plan to the extent

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,

> (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or

> (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  "This statutory definition requires that a fiduciary 'must be someone acting in the capacity of manager, administrator, or financial advisor to a plan," and "uses differing criteria in imposing fiduciary obligations for each of these roles."  *Bd. of Trustees of Bricklayers & Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 272 (3d Cir. 2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 222 (2000)).  Thus, in "every case charging breach of ERISA fiduciary duty, . . . the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan

beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram*, 530 U.S. at 226; *see also Renfro v. Unisys Corp.*, 671 F.3d 314, 321 (3d Cir. 2011) ("Because an entity is only a fiduciary to the extent it possesses authority or discretionary control over the plan, we 'must ask whether [the entity] is a fiduciary with respect to the particular activity in question.'") (internal citations and quotation marks omitted).

Here, the allegations levied in the Complaint against the Individual Defendants relate solely to the handling and denial of Plaintiff's claim for benefits, and thus, the dispositive question in determining whether the Individual Defendants are fiduciaries in this case is whether the Individual Defendants exercised discretionary authority in the administration of the Plan. *See Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 422 (3d Cir. 2013) (finding that allegations pertaining to the disposition of benefits under a plan to beneficiaries falls within the category of plan administration). Defendants argue that the Complaint fails to allege facts sufficient to find that the Individual Defendants exercised discretionary authority relating to the denial of Plaintiff's claim. In opposition, Plaintiff contends that the correspondence between each of the Individual Defendants and Plaintiff that was alleged in the Complaint demonstrates that the Individual Defendants wielded the discretionary authority in evaluating, and making the ultimate decision on, Plaintiff's claim.

As outlined above, ERISA specifically sets forth the criteria for an entity to be deemed a fiduciary. The linchpin of fiduciary status is discretion, and discretion is a fact specific inquiry. *See Curcio*, 33 F.3d at 233. In that regard, for Plaintiff to establish that the Individual Defendants were fiduciaries in this case, Plaintiff must sufficiently allege that the Individual Defendants had the discretion to determine Plaintiff's eligibility for benefits. *Confer v. Custom*

*Eng'g Co.*, 952 F.2d 34, 39 (3d Cir. 1991). Conversely, "persons who perform purely ministerial tasks, such as claims processing and calculation, cannot be fiduciaries because they do not have discretionary roles." *Id.*; *see Edmonson*, 725 F.3d at 422 ("When a plan or policy requires the performance of an act of . . . administration in a specific manner, then ERISA's fiduciary duties are not implicated."); *Mehra v. Pfizer Ret. Comm.*, No. 11-3854, 2013 WL 5288008, at *8 (D.N.J. Sept. 17, 2013) ("Allegations and facts showing merely ministerial tasks, . . . without any showing that [the defendant] had discretion on how to administer the plan, would be insufficient to establish fiduciary status."); *see also* Dep't of Labor Interpretive Bulletin 75-8, 29 C.F.R. § 2509.75-8 ("[A] person who performs purely ministerial functions . . . for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan.").

In this case, Plaintiff fails to allege facts sufficient to establish that the Individual Defendants possessed discretionary authority regarding the determination of Plaintiff's eligibility for benefits. In that regard, the Complaint alleges, generally, that each of the Individual Defendants were, at all relevant times, "employee[s] of . . . Liberty, and [were] charged with and/or involved with the handling of [P]laintiff's claims with Liberty." Compl. ¶¶ 4-8. With respect to Ms. Wright, the Complaint merely alleges that, as the case manager for Plaintiff's claim, Ms. Wright corresponded with Plaintiff and his counsel. *See id.* at ¶¶ 33-36, 38, 52(g). Specifically, the Complaint alleges that Ms. Wright characterized Plaintiff's disability as a "fairytale," sent Plaintiff a letter regarding the Plan's provision limiting the period of time that a participant can receive benefits due to a psychiatric condition, and questioned the status of Plaintiff's counsel. *See id*.

With respect to Ms. Eagen, the Complaint simply alleges that, following Plaintiff's request that Ms. Wright be removed from his case, Ms. Eagen assumed the role of case manager for Plaintiff's claim, and that Ms. Eagen exchanged correspondence with Plaintiff regarding Liberty's review of Plaintiff's eligibility for benefits, including its requests for medical records. *See id.* at ¶¶ 39, 41, 46, 48-51.  The Complaint only briefly references Ms. Durling, alleging that Ms. Durling attempted to justify Defendants' actions in a response to a letter from Plaintiff's counsel, and that Ms. Durling confirmed that Defendants had requested medical records from various providers.  *See id.* at ¶¶ 53, 59.  The Complaint is even scarcer with regard to Ms. Mack, merely alleging that she sent Plaintiff a letter indicating that Liberty had reversed its initial denial of Plaintiff's claim.  *See id.* at ¶ 29.  Finally, outside of identifying Ms. Winterer as an employee of Liberty, *id.* at ¶ 7, the Complaint fails to reference Ms. Winterer altogether.

Based on these threadbare allegations, the Court cannot find that any of the Individual Defendants acted as fiduciaries with respect to the administration of the Plan.  Significantly, Plaintiff fails to allege any facts demonstrating that the Individual Defendants had discretion in determining Plaintiff's eligibility for benefits under the Plan.  *See Confer*, 952 F.2d at 39 (finding that the defendant was not a fiduciary, where it "had no discretion to deny or allow [the plaintiff's claim," and was bound "to follow the written plan instrument and to follow instructions of the administrator.").  Rather, the allegations demonstrate the the Individual Defendants merely performed ministerial functions with respect to Plaintiff's claim, such as communicating with Plaintiff regarding his eligibility for benefits under the Plan.  *See Mehra*, 2013 WL 5288008 at *9 ("[C]ommunications regarding general plan benefits, alone, are insufficient to confer fiduciary status on the speaker."); *Miller v. Mellon Long Term Disability Plan*, 721 F. Supp. 2d 415, 429 (W.D. Pa. 2010) (finding that a case manager acted solely in a

ministerial capacity, where the manager sent correspondence to the plaintiff, including a letter

informing her of the plan's initial denial of her claim for benefits, and ordered medical

examinations); *Erbe v. Billeter*, No. 06-113, 2007 WL 2905890, at *5 (W.D. Pa. Sept. 28, 2007)

(finding that the defendant lacked discretionary authority, where his role was limited to "claims

processing and investigation, which are considered ministerial tasks under the Department of

Labor regulations.").  Indeed, the allegations pertaining to the Individual Defendants fall

squarely within those activities that the Department of Labor has given as examples of

ministerial acts.  *See* 29 C.F.R. § 2509.75-8 (listing among the tasks that are ministerial,

"advising participants of their rights and options under the plan," preparing "reports concerning

participants' benefits," and the "[p]rocessing of claims.").  Tellingly, Plaintiff fails to identify,

and the Court has not found, any cases holding that employees acting in a similar capacity are

fiduciaries under ERISA.  Accordingly, because the Individual Defendants are not proper

defendants on a § 502(a)(1)(B) claim, and because Plaintiff has failed to allege sufficient facts,

even accepted as true, to support a finding that the Individual Defendants possessed discretionary

authority with respect to the denial of Plaintiff's claim for benefits, the Court dismisses

Plaintiff's ERISA claims against the Individual Defendants without prejudice.

       **B.**       **Preemption of State Law Claims**

Defendants argue, next, that Plaintiff's state law claims, asserted in Counts One, Two,

Three, and Five of the Complaint, relate to Plaintiff's claim for benefits under the Plan, and thus,

are preempted under ERISA.  In opposition, Plaintiff contends that his state law claims "are not

directly premised on the existence of [an] ERISA governed benefits plan."[6]  Pl.'s Br. at 18.

---

[6] In his Opposition brief, Plaintiff also argues, for the first time, that, in addition to having long-
term disability benefits under the Plan, Plaintiff also paid for additional long-term disability
benefits that "should not be considered governed by ERISA as it is not part of . . . the [Plan]."

Congress enacted ERISA to create "a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004); *see New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 303 (3d Cir. 2014) ("Congress enacted ERISA to ensure that benefit plan administration was subject to a single set of regulations and to avoid subjecting regulated entities to conflicting sources of substantive law."). "To ensure that plan regulation resides exclusively in the federal domain, Congress inserted in the statute an expansive preemption provision, codified at § 514(a)." *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 82 (3d Cir. 2012); *Davila*, 542 U.S. at 208 ("ERISA includes expansive pre-emption provisions, . . . which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'") (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). Indeed, the Supreme Court has emphasized that ERISA possesses "extraordinary pre-emptive power." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987); *see FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990) (noting that ERISA's "pre-emption clause is conspicuous for its breadth.").

Section 514(a), the express preemption provision of ERISA, provides, with limited exceptions not implicated in this case, that ERISA preempts "any and all State laws insofar as they . . . relate to any employee benefit plan" covered under the statute. 29 U.S.C. § 1444(a).

---

Pl.'s Br. at 19. To that end, the Complaint is devoid of any reference to benefits arising under a policy other than the Plan; in fact, the Complaint does not contain any allegations relating to additional disability benefits altogether. Rather, the sole insurance policy referenced in the Complaint is the Plan, which Plaintiff alleges is an "ERISA policy." Compl. ¶ 14. Thus, because it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc*., 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted), it follows that Court will not consider Plaintiff's argument that he is eligible for disability benefits outside of the Plan on this Motion. *See Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008) (observing that "a plaintiff 'may not amend his complaint through arguments in his brief in opposition . . . .'").

The Third Circuit has observed that the statutory phrase "relate to" "has always been given a broad, common-sense meaning, such that a state law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 293–94 (3d Cir. 2014) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)) (internal quotation marks omitted). The statute defines "State law" as "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State," 29 U.S.C. § 1144, and the Supreme Court has "emphasized that the pre-emption clause is not limited to 'state laws specifically designed to affect employee benefit plans.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48 (1987) (quoting *Shaw*, 463 U.S. at 98). "State common law claims fall within this definition and, therefore, are subject to ERISA preemption." *Iola*, 700 F.3d at 83. For example, as relevant here, the Third Circuit has explained that "State law claims of bad faith and breach of contract . . . ordinarily fall within the scope of ERISA preemption . . . ." *Early v. U.S. Life Ins. Co. in City of New York*, 222 F. App'x 149, 151–52 (3d Cir. 2007); *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 278 (3d Cir. 2001) (observing that "suits against . . . insurance companies for denial of benefits, even when the claim is couched in terms of common law negligence or breach of contract, have been held to be preempted by § 514(a)."); *see, e.g., Ford v. UNUM Life Ins. Co. of Am.*, 351 F. App'x 703, 706 (3d Cir. 2009) (holding that the plaintiff's state law claims for breach of contract, negligence, and intentional infliction of emotional distress were preempted under ERISA).

To determine whether a state law cause of action is subject to ERISA preemption, courts focus on whether the claim at issue "relates to" an ERISA plan. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990). "The term 'relate to' in § 514(a) is 'deliberately expansive.'" *Iola*, 700 F.3d at 83 (quoting *Ingersoll-Rand*, 498 U.S. at 138). Nevertheless, the

Supreme Court has cautioned that if the term "'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course . . . ." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995). Thus, in *Shaw,* the Court explained that a "law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." 463 U.S. at 96–97. In applying that test, courts "look to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans.'" *Iola*, 700 F.3d at 83–84 (quoting *California Div. of Labor Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 325 (1997)).

At the outset, the Court finds that Plaintiff's claims for breach of contract (Count One), bad faith (Count Two), and malicious, willful, wanton, and/or reckless disregard of Plaintiff's rights (Count Three)[7] undoubtedly relate to the Plan, and thus, are preempted under ERISA. As the Third Circuit has explained, claims alleging breach of contract, bad faith, or negligence in connection with the denial of benefits under an ERISA-covered plan are preempted under ERISA, because those claims are "are premised on the existence of the plan . . . ." *Menkes*, 762 F.3d at 294; *see, e.g.*, *Iola*, 700 F.3d at 84 (finding that the plaintiff's common law claims had "'a connection with' the ERISA plans because they are premised on the existence of the plans."); *Pryzbowski*, 245 F.3d at 273 (holding that the plaintiff's common law claims, including her

---

[7] As noted in Defendants' moving brief, *see* Defs.' Br. at 8-9, Count Three is pled without citation to any statute or common law cause of action, and merely alleges that Defendants' conduct represents a malicious, willful, wanton, and/or reckless disregard of Plaintiff's rights. In their Motion to Dismiss, Defendants surmise that Plaintiff is attempting to assert a claim for negligence, a contention that Plaintiff does not address in his Opposition brief. The Court agrees, and accordingly, will construe Count Three as a negligence claim for the purposes of this Opinion.

claim that the defendants "acted in willful and wanton disregard of her health" in denying her benefits, were preempted). Indeed, in *Pilot Life*, the Supreme Court held that the plaintiff's common law claims for breach of contract and bad faith "undoubtedly [met] the criteria for pre-emption under § 514(a)," because each claim was "based on alleged improper processing of a claim for benefits under an employee benefit plan . . . ." 481 U.S. at 48. "The rationale for these holdings is that the decision whether a requested benefit or service is covered by the ERISA plan falls within the scope of the administrative responsibilities of the [defendant], and therefore 'relates to' the employee benefit plan." *Pryzbowski*, 245 F.3d at 278.

Consistent with the jurisprudence of the Supreme Court and the Third Circuit, courts within this District routinely hold that common law claims alleging breach of contract, bad faith, or negligence in connection with the denial of benefits under an ERISA-governed plan are preempted. *See, e.g.*, *Estate of Jennings v. Delta Air Lines, Inc.*, 126 F. Supp. 3d 461, 468–69 (D.N.J. 2015) (finding that the plaintiffs' "claims for negligence and breach of contract 'relate[d] to' the Plan for purposes of ERISA preemption," because they were based on the denial of a claim for benefits under an ERISA-governed plan); *Majka v. Prudential Ins. Co. of Am.*, 171 F. Supp. 2d 410, 414 (D.N.J. 2001) (holding that ERISA preempted the plaintiff's claims that she "was entitled to long-term disability benefits under the terms of the Plan and that Prudential's failure to provide those benefits constituted breach of contract and of the duty of good faith and fair dealing."); *Weinstein v. Paul Revere Ins. Co.*, 15 F. Supp. 2d 552, 559 (D.N.J. 1998) (finding that the the plaintiff's claim for bad faith denial of her insurance claim "necessarily relate[d] to an alleged improper processing of a benefits claim under a plan covered by ERISA," and thus, was preempted); *D'Alessandro v. Hartford Life & Acc. Ins. Co.*, No. 09-115, 2009 WL 1228452, at *2 (D.N.J. May 1, 2009) (finding that ERISA preempted the plaintiff's state law claims for

breach of contract and bad faith denial of disability benefits, since "Plaintiff is essentially seeking to claim benefits under the long-term disability plan.").

Here, under the rationale discussed above, the Court finds that Plaintiff's claims for breach of contract, bad faith, and negligence are preempted under ERISA, because those claims are premised on the denial of Plaintiff's claim for long-term disability benefits under the Plan. To that end, Plaintiff's breach of contract claim simply alleges that Defendants' actions "in denying disability benefits to Plaintiff . . . constitute[s] a breach of contract." Compl. ¶ 85. Within that Count, Plaintiff seeks "an order declaring [P]laintiff to be disabled *within the meaning of the policy*," as well as an award of past and future benefits. *Id.* at ¶ 86 (emphasis added). Similarly, Count Two alleges that Defendants "committed bad faith by denying benefits under the aforementioned policy without good reason," *id.* at ¶ 88 (emphasis added), and seeks retroactive benefits and an order declaring Plaintiff disabled under the Plan. *Id.* at ¶ 91. Additionally, in Count Three, Plaintiff "repeats and realleges each and every fact set forth in the preceding paragraphs," *id.* at ¶ 92, and alleges that "the actions of Defendants . . . [were] malicious," or constitute a "willful, wanton, and/or reckless disregard of Plaintiff's rights." *Id.* at ¶¶ 92-96. However, the only "actions" referenced in preceding portions of the Complaint relate to Defendants' review and denial Plaintiff claim for disability benefits under the Plan. And, once, again, within Count Three, Plaintiff requests a declaration of disability and an award of disability benefits. *Id.* at ¶ 96. Thus, these claims clearly all relate to the denial of Plaintiff's claim for benefits under the Plan, and, accordingly, are preempted under ERISA.

Finally, the Court also finds ERISA preempts Count Five of the Complaint, which alleges that Defendants violated the New Jersey Unfair Claim Settlement Practices Act, N.J.S.A. § 17B:30–13.1, by, *inter alia*: (a) "[m]isrepresenting pertinent facts or insurance *policy provisions*

*relating to coverages at issue*"; (b) "failing to acknowledge and act reasonably promptly upon communications with respect to *claims arising under insurance policies*"; (c) "[f]ailing to adopt and implement reasonable standards for the prompt investigation of claims *arising under insurance policies*"; (d) "[r]efusing to pay claims without conducting a reasonable investigation based upon all information"; (e) "[c]ompelling insureds to instigate litigation to recover amounts due *under an insurance policy* by offering substantially less than the amounts ultimately recovered in actions brought by insureds"; (f) "[m]aking claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which the payments are being made"; (g) "[d]elaying the investigation or payment of claims"; and (h) "[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim." Compl. ¶ 105 (emphasis added). Within that Count, Plaintiff also seeks an order declaring him "disabled within the meaning of the policy," and an award of disability benefits. *Id*. at ¶ 107 (emphasis added).

As with Plaintiff's other common law claims, Plaintiff's claim for violation of the Unfair Settlement Practices Act directly relates to the denial of his claim for benefits under the Plan. *See O'Malley v. Sun Life Assur. Co. of Am.*, No. 04-5540, 2006 WL 182099, at *2 (D.N.J. Jan. 23, 2006) ("Plaintiff's causes of action for breach of contract, negligence, breach of implied covenant of good faith and fair dealing, *and violations of the New Jersey Unfair Claims Settlement Practices Act* and the New Jersey Consumer Fraud Act are preempted.") (emphasis added). As illustrated in this Court's recitation of Plaintiff's allegations under Count Five, Plaintiff's claim is contingent upon the Plan, alleging misconduct in connection with the administration of the Plan, and seeking the recovery of disability benefits thereunder. *See* Compl. ¶¶ 103-107. Simply put, absent the existence of the Plan, Plaintiff's cause of action for

violation of the New Jersey Unfair Claim Settlement Practices Act would cease to exist.

Accordingly, the Court finds that Count Five is preempted by ERISA, and thus, that Count is

dismissed.[8]

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted, as follows:  (1)

Plaintiff's claims against the Individual Defendants are dismissed without prejudice; (2)

Plaintiff's common law claims are dismissed with prejudice; and (3) Plaintiff's claims under §§

502(a)(2) and 502(a)(3) of ERISA are dismissed without prejudice.  Plaintiff is given leave to

amend his complaint, to assert a claim under § 502(a)(1)(B) of ERISA, within thirty (30) days

from the date of the Order accompanying this decision.


Dated:  March 22, 2018                                      /s/ Freda L. Wolfson
                                                            Hon. Freda L. Wolfson
                                                            United States District Judge

---

[8] Alternatively, the New Jersey Supreme Court – as well as at least one court within this District – has recognized that there is no private right of action under the New Jersey Unfair Claim Settlement Practices Act.  *See Pickett v. Lloyd's*, 131 N.J. 457, 467 (1993) (observing that the "regulatory framework [of the New Jersey Unfair Claim Settlement Practices Act] does not create a private cause of action . . . .); *Carevel, LLC v. Aspen Am. Ins. Co.*, No. 13-7581, 2016 WL 6775647, at *5 (D.N.J. Nov. 15, 2016) ("Because there is no private cause of action under the Unfair Claims Settlement Practices Act, . . . Plaintiff's Second Count is dismissed . . . .). Accordingly, even if Count Five were not preempted under ERISA, dismissal of that claim would be warranted.