# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DAVID HOCHEISER,** | Civil Action No. 3:17-cv-6096 FLW-DEA |
| **Plaintiff,** | |
| v. | MEMORANDUM OPINION AND ORDER |
| **LIBERTY MUTUAL INSURANCE COMPANY et al.,** | |
| **Defendants.** | |

ARPERT, United States Magistrate Judge

This matter comes before the Court on Plaintiff's Motion to Compel Defendants to Answer Plaintiff's Discovery Demands. ECF No. 35. Defendants oppose the Motion. ECF No. 36. The Court has fully reviewed the submissions of the parties and considers same without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Plaintiff's Motion is DENIED.

## I.    BACKGROUND[1]

The facts of this case are well known to the Parties and were set down at length in the Opinion of U.S. District Judge Frieda L. Wolfson dismissing the original Complaint. ECF No. 25. Briefly, Plaintiff was a mortgage broker for Wells Fargo. ECF No. 27 at ¶2. After being diagnosed with several medical impairments, Plaintiff filed a claim for long-term disability benefits under an employee-benefits plan established by Wells Fargo ("the Plan"). Id. at ¶¶ 2,12,16. The Plan was funded and administered by Liberty Mutual Insurance Co. and Liberty

---

[1] The following facts are taken from Mr. Hocheiser's Amended Complaint, ECF No. 27, and are assumed true for purposes of this Memorandum and Order.

Mutual Insurance Co. of Boston (collectively "Liberty") and governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132. Id. at ¶¶ 3,12,14. Liberty initially denied Plaintiff's claim, and Plaintiff appealed. Id. at ¶¶ 26-27. By letter dated December 9, 2014, Liberty notified Plaintiff it was reversing that denial, based on Liberty's determination that Plaintiff was eligible for long-term disability benefits. Id. at ¶ 29 and Exhibit 4. As a result, Plaintiff began receiving disability benefits under the Plan. Id. at ¶ 30 and Ex. 4). That said, the letter also stated that Liberty would continue to evaluate Plaintiff's claim and would require periodic updates from Plaintiff's medical providers. Id. Thereafter, Liberty sought and received several batches of medical records and authorizations updating Plaintiff's condition. Id. at 53-89. By letter dated May 23, 2016, Liberty terminated Plaintiff's long-term disability benefits under the Plan. Id. at ¶ 89. Liberty said the denial was based in part on a change in the Plan's definition of disability after two years of benefits payments, as well as its continuing review of Plaintiff's file. ECF No. 27-7 at pgs. 22-36. According to the Plan, during the first 24 months of payments, disability means, "the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial duties of *his Own Occupation*." ECF No. 1-1 at p. 45. (*emphasis added)* After 24 months, disability is defined as the inability "to perform the Material and Substantial duties *of Any Occupation*." Id. (*emphasis added*) Plaintiff administratively appealed the termination of benefits, a decision that was upheld on February 18, 2017. Id. at ¶¶ 88,93. On June 16, 2017, Plaintiff filed an action in Superior Court of New Jersey, Law Division, Monmouth County. Id. at ¶ 1. On August 14, 2017, Defendants removed the action to this District on the basis of federal question jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1441. Id. Thereafter, Defendants moved to dismiss Plaintiff's Complaint. Id.; *see also* ECF No. 7. Judge Wolfson dismissed without prejudice Plaintiff's claims against the five individual

defendants, Plaintiff's common law claims asserted in Counts One, Two, Three, and Five, as well as the claims under §§ 502(a)(2) and 502(a)(3) of ERISA asserted in Count Four. ECF No. 25. Plaintiff was given leave to amend the Complaint within 30 days. ECF No. 25,26. Plaintiff filed an Amended Complaint on April 18, 2018. ECF No. 27. On June 15, 2018, Defendants filed a Motion to Dismiss the Amended Complaint, ECF No. 34, while Plaintiff filed the instant motion. ECF No. 35.

II. **LEGAL STANDARD**

Under 29 U.S.C. § 1132(a)(1)(B), or ERISA, a participant in an employee-benefit plan is empowered to bring suit to recover benefits due him. The United States Supreme Court has held that a Court's evaluation of an ERISA claim requires a de novo standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the arbitrary-and-capricious standard of review applies. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 112-15 (1989). Whether the de novo or arbitrary-and-capricious standard applies affects the judicial inquiry into both any dispositive motion, *see* Hatchigian v. Nat'l Elec. Contractors Ass'n, 589 F. App'x 606, 608 (3d Cir. 2014) ("where an ERISA plan's terms provide the plan administrator with discretionary authority to interpret the plan and determine benefits eligibility, the administrator's decision will be upheld unless it is arbitrary and capricious.")) and, more important to the instant Motion, the discovery parameters.

When evaluating ERISA claims under the arbitrary-and-capricious standard, a court is limited to "that evidence that was before the administrator when he made the decision being reviewed." Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997), *abrogated on other grounds by* Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008). That said, the Third Circuit

3

also has found "that when a reviewing court is deciding whether to employ the arbitrary and capricious standard or a more heightened standard of review, it may consider evidence of potential biases and conflicts of interest that are not found in the administrator's record." Johnson v. UMWA Health & Ret. Funds, 125 F. App'x 400, 405- 06 (3d Cir. 2005). The existence of a conflict of interest (e.g., when the entity responsible for determining benefits eligibility also pays the benefits) or evidence of potential biases or procedural abnormalities are factors to be considered, among others, in determining the appropriate standard of review. Glenn, 554 U.S. at 117.

III. **DISCUSSION**

In this case, Plaintiff seeks, via interrogatories and requests for production, details about all facts, personnel and documents Liberty relied on in reaching the decision to terminate disability benefits. ECF No. 35-2 at pgs. 84-99. Defendants objected to most of the interrogatory questions and requests for documents. Id at pgs. 163-181. The most-often stated objection was that such information was "beyond that permitted in ERISA cases." Id. Otherwise, Defendants stated, as in the response to Interrogatory No. 1, that Plaintiff had received the complete administrative claims file from Liberty on October 16, 2017. Id. at pg. 177.

Defendants contend the objections are grounded in Third Circuit jurisprudence declaring that where an ERISA-governed plan grants the plan administrator "clear and unequivocal discretion to administer terms of the plan," discovery is limited to the administrative record on which the termination decision was based. Def. Br. in Opp. to Mot. to Compel at 1. Defendants say language in the Plan, both explicit ("Interpretation of the Policy[:] Liberty shall possess the authority to construe the terms of this policy and to determine benefit eligibility hereunder." ECF No. 1-1 at p. 75) and suggestive ("In determining whether the Covered Person is disabled, Liberty will not consider…" Id at pg. 59), gives Defendants discretionary authority over the

Plan's administration. Defendants point to Viera v. Life Ins. Co. of North America for the proposition that "[t]here are no 'magic words'" connoting discretionary power, and that "discretionary powers may be granted expressly or implicitly." Def. Br. at 8-9 (*quoting* Viera, 642 F.3d 407, 413 (3d Cir. 2001). Defendants contend the Plan's explicit and suggestive phrasing referred to above "is functionally equivalent to Viera's suggested language and unequivocally grants Liberty discretion to interpret the plan." Def. Br. at 9. As a result, Defendants say, the arbitrary-and-capricious standard applies, and thus discovery is limited to the administrative record.

Defendants further contend that even if the broader, de novo standard of review were to apply, Plaintiff still would not be entitled to additional discovery because the administrative record is sufficiently "robust and includes the universe of documents this Court would need to make an independent benefit determination," including "3,912 pages [] and …the full panoply of Plaintiff's medical records, Liberty's peer reviews, claims notes, and correspondence between the parties." Def. Br. at 14.

Plaintiff contends the above jurisprudence is "not applicable to the discovery at issue in this matter" because Defendants "ignore the distinction between the *two policies* at issue in the case at bar." Pl. Br. in Support of Mot. to Compel at 15. (*emphasis added*) Specifically, Plaintiff contends there is an ERISA-governed disability plan provided by his Well Fargo employer AND an "additional …self-purchased policy by the plaintiff and thus [] not subject to the ERISA limitations." Id. As to this second policy, Plaintiff quotes Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 376 (2002) *overruled in part on other grounds by* Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329 (2003), for the proposition that "ERISA's civil enforcement provisions 'authoriz[e] civil actions for six specific types of relief.'" Id. Plaintiff contends the

5

non-ERISA claims are based "upon the bad faith and capricious actions undertaken by the defendants and their exercise of discretionary authority." Id. at 16. Thus, Plaintiff contends, "the objections espoused by defendants cannot be applicable and defendants must be compelled to provide the discovery requested." Id.

The Court's inquiry begins by noting that this is not the first time Plaintiff has referred to the existence of a second disability policy held by Plaintiff. Judge Wolfson remarked in her Opinion granting the Motion to Dismiss the original Complaint, "[i]n his Opposition brief, Plaintiff also argues, for the first time, that, in addition to having long-term disability benefits under the Plan, Plaintiff also paid for additional long-term disability benefits that 'should not be considered governed by ERISA as it is not part of...the [Plan].'" ECF No. 25, n6. But, Judge Wolfson stated, the original Complaint was devoid of references to a second, self-purchased disability policy and "because it is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss,' Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted), it follows that the Court will not consider Plaintiff's argument that he is eligible for disability benefits outside of the Plan on this Motion. See Bell v. City of Philadelphia, 275 F. App'x 157, 160 (3d Cir. 2008) (observing that "a plaintiff 'may not amend his complaint through arguments in his brief in opposition....'")." Id.

Like the original Complaint, the Amended Complaint also is "devoid of references to a second, self-purchased disability policy," though Plaintiff does employ the construction "Liberty disability policy(ies)" four times. ECF No. 27 at ¶¶ 40,42,44,46. In all other references, Plaintiff appears to refer to the policy and/or claim in the singular. *See, e.g.,* Id. at ¶ 79. ("This complaint was about the way in which the individual defendants handled Plaintiff's claim…."). Indeed,

Plaintiff demands in each Count that Plaintiff be declared "disabled within the meaning of the policy." Id. at pgs. 18-20.

The above notwithstanding, the first explicit reference to a second, self-purchased policy for the purposes of the instant motion comes in Plaintiff's Brief in Support of the Motion to Compel. ECF No. 35.[2] Plaintiff states that the "issue of two separate policies, one ERISA and one non-ERISA, has been present in this case from the outset." Id. at 2. Plaintiff evidences this point by citing not to the Amended Complaint nor to the original Complaint, but to the same brief in opposition to the Motion to Dismiss discussed in Judge Wolfson's footnote mentioned above. Id. Like Judge Wolfson, this Court can not consider Plaintiff's argument based on a second policy that is mentioned for the first time in his brief in support of the instant motion. See Bell, 275 F. App'x at 160 (observing that "a plaintiff 'may not amend his complaint through arguments in his brief ...."). This Court also can not entertain Plaintiff's suggestion made in the Reply Brief that Plaintiff be given leave to file what would be a second amended complaint to separately plead counts for any non-ERISA claims based on the purported second disability policy, as there is no formal motion before this Court seeking such relief. Thus, the only policy at issue before this Court is the one expressly referred to in the Amended Complaint, the Wells Fargo ERISA long-term disability plan.

As to this Plan, the Court begins by noting that per Viera, "[t]he plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies." Viera, 642 F.3d at 413 (*citing* Kinstler v. First Reliance Std. Life Ins. Co., 181 F.3d 243, 249 (2d Cir.1999). The Court finds Defendants have met this burden. The "Interpretation of the Policy" provision of the policy explicitly states: "Liberty shall possess the authority to construe the terms of this

---

[2] Plaintiff's letter brief reply to Defendants' opposition also references the second policy. ECF No. 38.

7

policy and to determine benefit eligibility hereunder." ECF No. 1-1 at pg. 75. Because Liberty possesses such discretionary authority, the arbitrary-and-capricious standard of review applies to this matter. Firestone, 489 U.S. at 112-15. Where the arbitrary-and-capricious standard applies, a court is limited to reviewing the record that was before the Plan administrator at the time the denial of benefits occurred. Mitchell, 113 F.3d at 440. As a result, discovery is limited to the administrative record upon which Defendants based the termination-of-benefits decision.

That said, discovery beyond the administrative record is permissible in some instances where there is a structural conflict of interest or procedural irregularities. See Johnson, 125 F. App'x at 405-06. "'The structural inquiry focuses on the financial incentives created by the way the plan is organized,' i.e., whether there is a conflict of interest, and 'the procedural inquiry focuses on how the administrator treated the particular claimant.'" Irgon v. Lincoln Nat. Life Ins. Co., No. CIV.A. 13-4731 FLW, 2013 WL 6054809, at *5 (D.N.J. Nov. 15, 2013) (*quoting* Post v. Hartford Ins. Co., 501 F.3d 154, 162 (3d Cir.2007) *overruled on other grounds by* Estate of Schwing v. Lilly Health Plan, 562 F.3d 522 (3d Cir. 2009)).

A conflict of interest can be created if an employer pays an independent insurance company both to evaluate claims and to pay plan benefits. Irgon, 2013 WL 6054809, at *5 (*citing* Glenn, 554 U.S. at 114. Plaintiff alleges that from the beginning Liberty "did everything to deny the plaintiff his benefits." Pl. Reply Br. at p.4. As such, Plaintiff does not explicitly allege that a conflict of interest exists, only that Liberty's "interest" in denying benefits "conflicts" with Plaintiff's contention that benefits should not have been denied. Nevertheless, Defendants concede a conflict of interest exists because "claims under the [disability] plan are both administered and paid by Liberty." Def. Br. at pg. 16 (*citing* Glenn, 554 U.S. at 114). However, Defendants also correctly point out that, under Glenn, "such a conflict is but one

8

factor among many for the Court to consider in determining whether Liberty abused its discretion in denying benefits." Id. (*citing* Glenn, 554 U.S. at 108). Absent more, the singular fact that Liberty administers and pays claims is not by itself enough to open the door to discovery of extra-record materials.

In a procedural analysis, "courts consider procedural irregularities to determine 'whether, in this claimant's case, the administrator has given the court reason to doubt its fiduciary neutrality.'" Irgon, 2013 WL 6054809, at *6 (*quoting* Post v. Hartford Ins., 501 F.3d at 165 (internal citations omitted). "These procedural irregularities may include, *inter alia:* (1) a reversal of a benefits determination without additional evidence, (2) a disregard of opinions previously relied upon, (3) a self-serving selectivity in the use of evidence or reliance on self-serving paper reviews of medical files, (4) a reliance on the opinions of non-treating physicians over treating physicians without explanation, (5) a reliance on inadequate information or incomplete investigation, (6) failure to comply with the notice requirements of Section 504 of ERISA, (7) failure to analyze all relevant diagnoses, and (8) failure to consider plaintiff's ability to perform actual job requirements." Id.; *See also* Miller v. Am. Airlines, Inc., 632 F.3d 837, 848-55; Lamanna v. Special Agents Mut. Benefits Ass'n, 546 F.Supp.2d 261, 287 (W.D.Pa.2008).

Here again, Plaintiff does not explicitly allege in the Amended Complaint any of Irgon's list of procedural irregularities. Plaintiff does, however, allege facts that could be construed as procedural irregularities, mainly that Liberty either ignored or failed to give proper weight to the opinions of Plaintiff's medical providers. *See e.g.,* ECF No. 27 at ¶85. Plaintiff also alleges a Liberty administrator was biased against Plaintiff's claim, as evidenced by the administrator describing Plaintiff's claimed disability as a "fairytale" in a denial letter. Id. at ¶ 61(g). No

further details about this allegation are provided. Defendants state that the correspondence referred by Plaintiff was a letter dated May 7, 2014 and avers that the word "fairytale" appears nowhere either in that letter or in the administrative record. ECF No. 36 at 17; *see also* July 2, 2018 Cert. of Shaina E. Hicks at ECF No. 36-1. Even if Plaintiff did explicitly allege procedural abnormalities, "the existence of procedural abnormalities is not an automatic trigger permitting discovery beyond the administrative record." Stevens v. Santander Holdings USA, Inc. Self-Insured Short Term Disability Plan, No. CIV.A. 11-7473 PGS, 2013 WL 322628, at *9 (D.N.J. Jan. 28, 2013). Indeed, "[a] plaintiff must establish a reasonable suspicion of misconduct before the court permits discovery" beyond the administrative record. Irgon, 2013 WL 6054809, at *5 (*citing* Delso v. Trustees of Ret. Plan for Hourly Employees of Merck & Co., No. CIV. 04-3009 (AET), 2006 WL 3000199, at *3 (D.N.J. Oct. 20, 2006) ("If a plaintiff establishes a reasonable suspicion of misconduct, then courts should allow discovery requests reasonably likely to either confirm or disconfirm the presence of bias. *See* Fed.R.Civ.P. 26(b)(1)).

In this case, Plaintiff's allegations that a court could construe as claims of procedural irregularities do not rise to the level that warrant discovery beyond the administrative record. In the end, Plaintiff's main contention is that Liberty either ignored or failed to give proper weight to the opinions of Plaintiff's medical providers. Plaintiff's allegations, without more, do not raise a reasonable suspicion of misconduct by Defendants. Thus, the Court will not permit discovery of documents beyond the administrative record.

As to Plaintiff's interrogatories, Plaintiff has not demonstrated with any specificity that the questions posed by those interrogatories are not already answered in the Administrative Record. Consider Interrogatory No. 3, which asks Defendants to "[p]lease set forth each fact YOU relied upon in determining to withhold payment of the claim tendered by David

Hocheiser." ECF No. 35-2 at 162. Interrogatory No. 5 asks Defendants, "[p]lease state the date that YOU determined that the claim for benefits tendered by David Hocheiser was not covered under the terms of the SUBJECT POLICY." Id. at p. 163. Finally, Interrogatory No. 7 asks Defendants, "[p]lease set forth each fact YOU relied upon in determining to withhold payment of the claim tendered by plaintiff." Id. at p. 164. Defendants have stated that the administrative record provided to Plaintiff is 3,200 pages and includes "the full panoply of Plaintiff's medical records, Liberty's peer reviews, claims notes, and correspondence between the parties." Def. Br. at 14. Plaintiff has not made any showing that answers to such interrogatories would fill any gaps in such a voluminous record. Without such specificity, the Court is not persuaded that Plaintiff requires this Court's assistance to compel answers to gain information it may already have.

## IV. CONCLUSION AND ORDER

Having considered the papers submitted pursuant to Federal Rule of Civil Procedure 78 and for the reasons set forth above;

**IT IS** on this of 13th day of November 2018,

**ORDERED** that Plaintiff's Motion to Compel Discovery from Defendants [ECF No. 35] is **DENIED.**

*s/ Douglas E. Arpert*
DOUGLAS E. ARPERT
UNITED STATES MAGISTRATE JUDGE
